# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| KEVIN CONNOLLY, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-129 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| ALLTRAN FINANCIAL LP, | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kevin Connolly is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a personal credit card account.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from Plaintiff was incurred as a result of a consumer transaction.

6. Defendant Alltran Financial, LP, ("Alltran") is a foreign limited partnership with its primary offices located at 5800 North Course Drive, Houston, Texas 77072.

7. Alltran is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Alltran is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Alltran is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

### *Chase's February 18, 2018 Account Statement*

10. On or about February 18, 2018, Chase Bank ("Chase") mailed an account statement to Plaintiff regarding an alleged debt, associated with Plaintiff's "Chase Freedom" credit card account with an account number ending in 6548 owned and issued by Chase. A copy of this account statement is attached to this complaint as Exhibit A.

11. Upon information and belief, the debt referenced in Exhibit A is a personal consumer credit card account, used only for personal, family, and household purposes.

12. Exhibit A states:

> The Past Due amount of $1,799.00 is included in your Minimum Payment.
>
> Payment Due Date: 03/15/18
> New Balance: $11,305.11
> Minimum Payment: $2,038.00
> Account number: ▮▮▮▮ 6548

. . .

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $11,305.11 |
| Payment Due Date | 03/15/18 |
| Minimum Payment Due | $2,038.00 |

Exhibit A.

13. Exhibit A states that, as of February 18, 2018, Plaintiff's account ending in 6548 had a "New Balance" of $11,305.11, a "Past Due Amount" of $1,799.00, a "Payment Due Date" of March 15, 2018, and a "Minimum Payment Due" of $2,038.00.

14. Upon information and belief, the acceleration clause in the underlying credit agreement governing the alleged debt referenced in Exhibit A provided for *optional* acceleration upon the consumer's default. *See, e.g.*, https://files.consumerfinance.gov/a/assets/credit-card-agreements/pdf/Chase_Bank_USA/Freedom_Visa_Agreement.pdf ("2018 Chase Freedom Credit Card Agreement") at 2 ("If your account is in default, we **may** close it without notice and require you to pay your unpaid balance immediately.") (emphasis added).

15. Exhibit A also contains an "ACCOUNT MESSAGE" that the "account is closed and no longer available for use."

16. Exhibit A states that the creditor has closed the account but does not state that the consumer must pay the unpaid balance immediately. Instead, Exhibit A states that the consumer can avoid acceleration and return the account to a current status by tendering the minimum payment amount on or before March 15, 2018, the payment due date.

17. Exhibit A states that Chase would not exercise its rights under the optional acceleration clause until, at the earliest, March 15, 2018.

*Alltran's March 7, 2018 Letter*

18. On or about March 7, 2018 Alltran mailed Plaintiff a debt collection letter regarding an alleged debt, allegedly owed to "Chase Bank USA, N.A." and associated with

3

Plaintiff's Chase account ending in 6548. A copy of this letter is attached to this complaint as Exhibit B.

19. Upon information and belief, the alleged debt referenced in Exhibit B is the same alleged debt referenced in Exhibit A.

20. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, Exhibit B is a form debt collection letter, generated by computer, and used by Alltran to attempt to collect alleged debts.

22. Upon information and belief, Exhibit B was the first letter that Alltran mailed to Plaintiff with respect to the alleged Elan debt referenced in Exhibit B.

23. Exhibit B contains the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector send the consumer along with, or within five days of, their initial communications:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within the thirty day period that the debt, or any portion thereof, is disputed, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days from receiving this notice, this office will provide you the name and address of the original creditor, if different from the current creditor.

Exhibit B.

24. Exhibit B contains the following account information:

> Creditor: Chase Bank USA, N.A.
> Account: XXXXXXXXXXXX6548
> Alltran ID: ▇▇▇6623
> Past Due Amount: $11,305.11
> Partial Account Number for Your Security

Exhibit B.

25. Exhibit B also contains the following:

4

> Please remit payment in full of any undisputed amount of the past due amount, payable to Chase Bank USA, N.A., in the enclosed envelope.
>
> . . .
>
> We want to help you resolve this account. If you wish to discuss your account, please call DESHUNDA ARCENEAUX at 888-793-6186, extension 4016, so we may assist you.

Exhibit B.

26. Exhibit B, mailed on March 7, 2018 --- a week before the "Payment Due Date" stated in Exhibit A --- states the "Past Due Amount" as of March 7, 2018 is $11,305.11, and seeks "payment in full of any undisputed amount."

27. Exhibit B makes no reference whatsoever to any minimum payment amount that Plaintiff could pay to return the account to a current status.

28. Exhibit B, thus, represents that the debt had been accelerated and the full balance was due when Exhibit B was mailed.

29. Moreover, Exhibit B not only represents that the full balance was due as of the date of Exhibit B, but also falsely represents that this amount was "past due."

30. The representation in Exhibit B that Plaintiff's account had a "past due amount" of $11,305.11 as of March 7, 2018 is false, deceptive, misleading, and unconscionable.

31. According to Exhibit A, as of April 12, 2018, when Alltran mailed Exhibit B, Plaintiff's account had a "Past Due Amount" of $1,799.00, a "Minimum Payment Due" of $2,038.00, and a "Payment Due Date" of March 15, 2018. Exhibit A.

32. By mailing the February 18, 2018 account statement, Chase waived its right to accelerate the maturity of the account before March 15, 2018, and as of the March 7, 2018, when Alltran mailed its letter, Chase had not exercised the optional acceleration clause, notwithstanding whether Chase had closed or charged off the account for accounting purposes. *See, e.g., Johnson v. LVNV Funding*, No. 13-cv-1191, 2016 U.S. Dist. LEXIS 19651, at *15

(E.D. Wis. Feb. 18, 2016) ("That WaMu chose to write off the debt does not mean that it could improperly accelerate it."); *see also, Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1160-61 (Ind. Ct. App. 2010) (in the context of credit card accounts, "a 'charge off' appears to be an accounting device that has no bearing upon the question of whether an optional acceleration clause has been invoked.").

33. The unsophisticated consumer cannot determine whether the debt had been accelerated or not, or how much debt is actually due as of the date of Exhibit B. Exhibit B states that the "Past Due Amount" as of March 7, 2018 is $11,305.11 while Exhibit A states that only the minimum payment ($2,038.00) is due, and that only a portion of the minimum payment ($1,799.00) is past due. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'"); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (debt collector misleads consumer by stating a "current balance" without disclosing that a portion of that balance "might not yet be due, let alone overdue."); *Barnes v. Advanced Call Ctr. Techs, LLC*, 493 F.3d 838, 840 (7th Cir. 2007) ("only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)"); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("What [the debt collector] certainly could do was to state the total amount **due** --- interest and other charges as well as principal --- on the date the dunning letter was sent. We think the statute required this.").

34. Plaintiff was confused by Exhibits A and B.

35. The unsophisticated consumer would be confused by Exhibits A and B.

36. Plaintiff had to spend time and money investigating Exhibits A and B.

### *The FDCPA*

37. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

38. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

39. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

7

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

40. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

41. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed

8

the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th

9

Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

42. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

43. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

44. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of — the character, amount, or legal status of any debt."

45. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

46. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

47. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

48. 15 U.S.C. § 1692g(a) states:

>a) **Notice of debt; contents**
>
>>Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the

following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

49. The debt collector must state the amount of the debt in a non-confusing manner. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016) (citing *Chuway*, 362 F.3d at 947); *see also, Ozier v. Rev-1 Sols., LLC*, No. 17-cv-118, 2017 U.S. Dist. LEXIS 126017, at *6 (E.D. Wis. Aug. 9, 2017) ("The FDCPA requires a debt collector to accurately, and without deceptive language, state the amount of the debt owed.") (citing 15 U.S.C. § 1692e).

### *The WCA*

50. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

51. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett v. Community Credit Plan, Inc.*, 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

52. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

53. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

11

54. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

55. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

56. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

57. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

58. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

59. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …." Wis. Admin.

Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

60. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

61. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Prior to sending Exhibit B, Alltran knew or should have known Chase had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $2,038.00, and a "Payment Due Date" of March 15, 2018.

64. Prior to sending Exhibit B, Alltran knew or should have known that Chase had not accelerated Plaintiff's account balance on the date Alltran mailed Exhibit B to Plaintiff.

65. Alltran represented to Plaintiff that Plaintiff's Chase account had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

66. Alltran misrepresented the amount, character, and legal status of the debt it was collecting.

67. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – WCA

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

69. Prior to sending Exhibit B, Alltran knew or should have known Chase had sent Plaintiff an account statement stating Plaintiff's account had a "Minimum Payment Due" of $2,038.00, and a "Payment Due Date" of March 15, 2018.

70. Prior to sending Exhibit B, Alltran knew or should have known that Chase had not accelerated Plaintiff's account balance on the date Alltran mailed Exhibit B to Plaintiff.

71. Alltran represented to Plaintiff that Plaintiff's Chase account had been accelerated by seeking to collect the entire balance and not just the amount actually due or the amount past due.

72. Alltran misrepresented the amount, character, and legal status of the debt it was collecting.

73. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

74. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent an account statement by Chase in the form of Exhibit A, (c) and subsequently were sent a letter in the form of Exhibit B, (d) where the letter in the form of Exhibit B was mailed prior to the "Minimum Payment Due Date" stated in the account statement in the form of Exhibit A, (e) and the alleged debt was incurred for personal, family or household purposes, (f) and the letter in the form of Exhibit B was mailed between January 24, 2018 and January 24, 2019, (f) and was not returned by the postal service.

75. The Class is so numerous that joinder is impracticable.

76. Upon information and belief, there are more than 50 members of the Class.

77. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit B</u> violates the FDCPA and/or the WCA.

78. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

79. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

80. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

81. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 24, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge

John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com